IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ASHLEY BASS ) | |
| ) | |
| v. ) | No. 3:20-0203 |
| ) | |
| BENTON BASS ) | |

**To: The Honorable William L. Campbell, Jr., District Judge**

# REPORT AND RECOMMENDATION

Currently pending is a motion to dismiss, or in the alternative, motion for judgment on the pleadings, filed by Defendant Benton Bass (Docket No. 27), to which *pro se* Plaintiff Ashley Bass has filed two responses: "objections" to the motion to dismiss (Docket No. 30), and a separate "objection" to the memorandum of law filed contemporaneously with Defendant's motion. (Docket No. 31.) Defendant has also filed a reply to Plaintiff's two responses (Docket No. 33), to which Plaintiff has filed a sur-reply. (Docket No. 36.)

For the reasons that follow, the undersigned Magistrate Judge respectfully recommends that Defendant's motion (Docket No. 27) be GRANTED.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff, a resident of Nashville, Tennessee, is the biological daughter of Defendant, a resident of Pearcy, Arkansas. In December 2007, Defendant entered into a postnuptial agreement with his then wife, Vicky Haynes, in Hot Springs, Arkansas, which detailed how the couple's joint

---

[1] This factual recitation is taken from Plaintiff's initial complaint (Docket No. 1) and subsequent amended complaint. (Docket No. 21.)

marital property would be distributed in the event of divorce. According to Plaintiff, the agreement provided that, upon dissolution of the marriage, Plaintiff and her brother would each receive "$500,000 or a business and a house." (Docket No. 1 at 2.)

Just days after execution of the postnuptial agreement, Ms. Haynes filed for divorce from Defendant. Plaintiff contends that following the divorce, her brother received $500,000 pursuant to the agreement, as well as a house and a marina business ("Beach Island resort") located in Union County, Tennessee, but that she did not receive any of the money or property she was entitled to under the terms of the agreement. She therefore alleges breach of contract, and additionally accuses Defendant of committing fraud by spending her portion of the property "on his paramour girlfriend and or [sic] us[ing] it to pay his back taxes." (*Id*. at 3.)

**B. Procedural Background**

Plaintiff filed her initial complaint in March 2020. (Docket No. 1.) After being served with the complaint, Defendant, who was also proceeding *pro se* at the time, filed a single-page "response" in which he stated only that Plaintiff's action was "filed prematurely and … in the wrong state." (Docket No. 4 at 1.) The following day, Defendant filed a separate answer in which he asserted three defenses to Plaintiff's claims based on lack of subject-matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. (Docket No. 7 at 2.) On April 16, Defendant—still acting *pro se*—filed a motion to dismiss. (Docket No. 8.)

On August 24, 2020, Plaintiff filed a document labeled "amended complaint," although the filing only purported to add an "additional fraud count" to the initial complaint. (Docket No. 21.) Although Plaintiff did not seek leave to file this "amended complaint," the Court permitted the filing after Defendant—who by this point had retained counsel—filed an answer to the "amended complaint" (Docket No. 22), which suggested that Defendant consented to the filing. *See* Fed. R.

2

Civ. P. 15(a)(2) (noting that in most cases, "a party may amend its pleadings only with the opposing party's consent or the court's leave"). In light of Defendant's consent, as well as Plaintiff's *pro se* status, the Court found that the initial March 2020 complaint and the "amended" filing on August 24, 2020 should be construed together as a filing that superseded the original complaint as the legally operative complaint in this matter. (Docket No. 24 at 3.)[2] Accordingly, the Court denied as moot Defendant's previously filed *pro se* motion to dismiss and ordered that any renewed motion to dismiss be filed by March 12, 2021. (*Id*. at 1, 3.) Defendant now moves again for dismissal.

## II. ANALYSIS

Defendant's motion seeks dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1)[3], lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim under Rule 12(b)(6), or, alternatively, seeks judgment on the pleadings under Rule 12(c).[4] While any motion seeking dismissal under one of the defenses listed in Rule 12(b) must generally be made "before pleading if a responsive pleading is allowed," this procedural requisite is largely inconsequential given that a party may move for dismissal for failure to state a claim via a motion for judgment on the pleadings under Rule 12(c)—as Defendant has done here—which involves the same legal

---

[2] For ease of reference, these two filings are referred to in this Report and Recommendation together as "the Complaint."

[3] Unless otherwise indicated, any reference to a rule denotes the Federal Rules of Civil Procedure.

[4] Defendant's motion characterizes the alternative relief sought as a "Motion for Judgment on the Pleadings Under Rules 12(b)(b) [sic] and 12(c)" (Docket No. 27 at 1), while his accompanying memorandum describes the alternative relief as "judgment on the pleadings under 12(b)(6) and 12(c)." (Docket No. 28 at 1.) However, because a motion for judgment on the pleadings is permitted only under Rule 12(c), the Court assumes that Defendant intended to alternatively request dismissal under Rule 12(b)(6) based on failure to state a claim upon which relief can be granted.

3

standards as Rule 12(b)(6) motion, *Lindsay v. Yates*, 498 F.3d 434, 438 n.5 (6th Cir. 2007), and given that a court must dismiss an action "at any time" if it determines it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3)

However, whether Defendant has preserved a Rule 12(b)(2) defense based on lack of personal jurisdiction in this case is a closer call. Unlike subject-matter jurisdiction, the requirement that a court have personal jurisdiction "is a due process right that may be waived either explicitly or implicitly." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006). Counsel for Defendant has filed a general notice of appearance rather than a special appearance solely to contest jurisdiction (Docket No. 25), which the Sixth Circuit has, under certain circumstances, deemed sufficient to waive any personal jurisdiction defense. *See Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011) ("[D]efendants' filing of a general appearance with the district court constituted a voluntary acceptance of the district court's jurisdiction, and therefore, a waiver of Defendants' personal jurisdiction defense.") However, the Sixth Circuit recently emphasized that a defendant waives the defense only when his conduct "has given the court and the plaintiff a reasonable expectation that the defendant intends to defend the suit on the merits." *Blessing v. Chandrasekhar*, 988 F.3d 889, 895 (6th Cir. 2021).

Although Defendant did not directly contest personal jurisdiction in his initial form answer, he asserted that the cause of action "has nothing to do with Nashville, TN" and "should be refiled at a later date in [Arkansas]" as part of an improper venue claim. (Docket No. 7 at 2.) Defendant's next filing similarly asked the Court to "dismiss this case at this time and direct the plaintiff to refile" following disposition of a separate pending lawsuit in the state of Arkansas involving the postnuptial agreement at issue here. (Docket No. 8 at 2.) Defendant then proceeded to file a subsequent answer to Plaintiff's "amended complaint"—with the benefit of counsel—which set

4

forth multiple affirmative defenses but did not challenge personal jurisdiction. (Docket No. 22.) Such action generally results in waiver. *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) ("A party waives the right to contest personal jurisdiction by failing to raise the issue when making a responsive pleading.") (citing Fed. R. Civ. P. 12(h)) (cleaned up).

Nevertheless, the Court finds that Defendant has preserved a right to contest personal jurisdiction in this matter. Notwithstanding counsel's failure to raise the defense affirmatively in Defendant's answer to the "amended complaint," Defendant's initial *pro se* filings make clear that he did not intend to defend the instant lawsuit on the merits. None of Defendant's actions to date may reasonably be described as "voluntary, active, and extensive participation" creating a "reasonable expectation" that he planned to do so. *King v. Taylor*, 694 F.3d 650, 660 (6th Cir. 2012) (internal citation omitted). Nor has Defendant committed the cardinal sin of "caus[ing] the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Gerber*, 649 F.3d at 520. And because the Court has permitted Plaintiff's irregular filings to be construed together to comprise the operative complaint in this matter, so too shall it liberally construe Defendant's multiple responses—including the initial *pro se* responsive pleading—as the applicable answer.

**A. Personal Jurisdiction**

In ruling on a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court "may rely upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Plaintiff has the burden of establishing that a court is permitted to exercise jurisdiction over the named defendant, although this burden is "relatively

slight"—Plaintiff need only make a prima facie showing that personal jurisdiction exists—where, as here, the court rules without conducting an evidentiary hearing. *Id.* (quoting *Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)).

Because this federal action is based on the diversity of the parties, the "law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir. 2005). Jurisdiction is appropriate over a non-resident defendant only in accordance with the forum state's long-arm statute and the limitations contained in the Due Process Clause of the Constitution. *Reynolds,* 23 F.3d at 1115. Tennessee's long-arm statute is coterminous with the Due Process Clause, *see* Tenn. Code Ann. § 20-2-214(a)(6), thus the Court need only determine whether maintaining personal jurisdiction over Defendant would violate federal constitutional due process. *Williams v. FirstPlus Home Loan Tr. 1996-2*, 209 F.R.D. 404, 410 (W.D. Tenn. 2002).

Personal jurisdiction may be general or specific. Plaintiff argues that Defendant is subject to general jurisdiction (Docket No. 31 at 2-3), which is applicable only when "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (internal citation omitted).

The Complaint contains two references to the state of Tennessee, the first of which is an assertion that Plaintiff's brother "received … [a] house and a business known as Beach Island resort," which is a marina located in Union County, Tennessee. (Docket No. 1 at 2.) The second is an averment that Defendant bought an additional marina (identified as "Lakeview Marina") in Knoxville, Tennessee, which was promised but never conveyed to Plaintiff, allegedly in violation

of the postnuptial agreement. (*Id*. at 5.) The Complaint further alleges that Defendant "controlled" and operated the marina business (*id.*), although there is no identification of when Defendant purchased this business, no description of how long Defendant managed the business, and no statement as to whether Defendant continues to own or operate any business in Tennessee.

Defendant challenges personal jurisdiction by providing declarations in which he affirms that he does not live, own property, or conduct business in the state of Tennessee. (Docket No. 29 at 1.) He further alleges that he has not transacted any business in the state since 2016. (Docket No. 34 at 2.) Such facts suggest that Defendant's relationship with Tennessee is not of the "continuous and systematic" nature necessary to establish general personal jurisdiction.

A plaintiff facing such a challenge to personal jurisdiction "may not rest on [her] pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise ... specific facts showing that the court has jurisdiction." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citation omitted and cleaned up). Plaintiff tries to meet this burden by responding broadly, and without the benefit of a supporting affidavit or other form of corroboration, that Defendant possesses "large seller held mortgage assets" in Union County, Tennessee, which are "collateralized by" the two marinas referenced in the Complaint. (Docket No. 30 at 3.) Plaintiff later attempts to buttress these claims by incorrectly suggesting that it is Defendant's burden to produce evidence at this juncture that he is not in possession of such assets, which he has ostensibly failed to do. (Docket No. 35 at 1-2.)

Although the Court is bound at this stage of litigation to view the facts in the light most favorable to Plaintiff, it remains her burden to establish personal jurisdiction, and the Complaint "must have established with reasonable particularity those specific facts that support jurisdiction." *Palnik v. Westlake Entertainment, Inc.,* 344 F. App'x 249, 251 (6th Cir.2009)

7

(quoting *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002)). Accepting the allegations in the Complaint as true, Defendant purchased two marinas in Tennessee, one that was conveyed to Plaintiff's brother and one that Defendant initially kept but later sold to a third party. (Docket No. 1 at 2; Docket No. 21 at 1.) The only date listed anywhere in the Complaint pertains to the brother's possession of a marina in 2008, more than 13 years ago. Such facts fall well short of establishing general jurisdiction over Defendant, which would require that his affiliations with Tennessee be "so continuous and systematic as to render [him] essentially at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Plaintiff's bare assertion in her responsive filings that "it is highly unlikely" that Defendant has divested himself from his interests in the two marinas in Tennessee based on her suspicion that Defendant has employed "straw buyers" (Docket No. 36 at 4) is simply insufficient to demonstrate that this Court has personal jurisdiction over Defendant. Defendant's declarations deny any ownership interests in the marinas in question or any other connection with the state of Tennessee. The Court assumes the veracity of these declarations because they do not conflict with the facts as alleged in the Complaint. *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997) (affirming district court's dismissal for lack of personal jurisdiction based on defendant's affidavits, which "were in no way inconsistent with the facts set forth by the plaintiff"). Given these representations, as well as Plaintiff's failure to carry her burden, the Court concludes that it lacks personal jurisdiction to hear the instant dispute.[5]

---

[5] Plaintiff does not present an argument for specific personal jurisdiction, which may apply when the subject defendant has sufficient minimum contacts that arise from or are related to the cause of action. *Williams,* 209 F.R.D. at 410. Regardless, the lack of specificity in Plaintiff's filings renders her unable meet the critical "purposeful availment" element required for specific jurisdiction to be exercised. *Air Products*, 503 F.3d at 550.

8

## B. Subject-Matter Jurisdiction

Subject-matter jurisdiction is a "threshold question" in any federal case. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). The plaintiff has the burden of proving that subject-matter jurisdiction exists, but federal courts retain "an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

Defendant invokes the so-called "domestic relations exception" to federal jurisdiction based on diversity by arguing that the claims set forth in Plaintiff's complaint should instead be resolved by a state court. As stated by the Supreme Court, the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees" based on "the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992). Nonetheless, the Supreme Court has also cautioned against an expansive application of the domestic relations exception by noting that federal courts are "equally equipped to deal with complaints alleging the commission of torts" even when divorce, alimony, or child custody is at issue. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *see also Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988) ("[A] district court does not lose jurisdiction merely because intra-family aspects are involved, particularly when the cause of action is cognizable in tort.").

When considering the applicability of the exception, courts must initially determine whether the subject plaintiff seeks "an issuance or modification or enforcement of a divorce, alimony, or child-custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir.

9

2015). Although the Complaint in this matter alleges breach of contract involving fraud—which suggests the existence of a tort that would normally remove the claim from the reach of the domestic relations exception, *Ankenbrandt*, 504 U.S. 689, 704—and seeks $5 million in compensatory damages (reduced to $4 million elsewhere in the complaint), Plaintiff requests numerous remedies that flow directly from the postnuptial agreement at issue: the "net operating income from one of the marinas," a reference to the business purportedly owed to Plaintiff as part of the postnuptial agreement; a "house [and/or] the same fruits and benefits" that her brother received pursuant to the postnuptial agreement; 35 acres of property; and family silver that previously belonged to Plaintiff's grandmother. (Docket No. 1 at 4, 7.) The postnuptial agreement[6] indeed lists a business, a residence, 35 acres of property, and family silver as benefits that would be conveyed to Plaintiff upon Defendant's divorce from Ms. Haynes. (*Id.* at 12-14.) Moreover, the Complaint specifically asks the Court to "award[] the plaintiff what the defendant was obligated to follow in the [postnuptial agreement]," which was "incorporated into the [divorce] decree" after Ms. Haynes filed for divorce. (*Id.* at 1, 7, 11.) As explained by the Sixth Circuit, these circumstances bring Plaintiff's action within the purview of the domestic relations exception:

> [T]he separation agreement containing the clause in regard to the sale of marital property was incorporated into the divorce decree, and consequently, the obligations now imposed are not those imposed by the law of contract or torts, as plaintiff contends, but are those imposed by the divorce decree. Therefore, the federal court lacks jurisdiction, as this case is not a tort or contract suit that merely has domestic relations overtones, but is one seeking a declaration of rights and obligations arising from marital status.

*McLaughlin v. Cotner*, 193 F.3d 410, 413 (6th Cir. 1999).

---

[6] Although courts are generally prohibited from considering extraneous documents as part of a Rule 12(b) analysis, Plaintiff has attached the postnuptial agreement as an exhibit to the Complaint. The Court will therefore treat this exhibit as part of the complaint for purposes of the instant motion. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Plaintiff contends that the domestic relations exception does not apply because she is not a party to Defendant's divorce proceedings. This fact does not change the analysis, however, as federal courts do not exercise jurisdiction over "divorce proceedings, claims which primarily concern domestic relations, or claims which would require the federal courts either to interfere with state court jurisdiction or with state decrees." *Johnson v. Thomas*, 808 F. Supp. 1316, 1318 (W.D. Mich. 1992) (internal citation omitted). As the title of her Complaint indicates, Plaintiff seeks "specific performance" of an agreement that became operative only upon the commencement of state court divorce proceedings. (Docket No. 1 at 1.) Plaintiff is therefore asking a federal court to enforce Defendant's compliance with provisions contained in a state divorce decree, which places her cause of action within the scope of the domestic relations exception. *See Luster v. Luster*, No. 1:20-CV-00211-GNS, 2021 WL 3711197, at *3 (W.D. Ky. Aug. 20, 2021). For these reasons, the Court lacks subject-matter jurisdiction, and the instant case should be dismissed.

In the alternative, the Court concludes that the doctrine of abstention counsels in favor of dismissing Plaintiff's case at this juncture. The parties acknowledge that the validity of the postnuptial agreement at issue is currently being challenged in the Arkansas Court of Appeals, the outcome of which clearly has bearing on whether Plaintiff is entitled to the remedies she seeks in her complaint pursuant to that agreement. Because allowing Plaintiff's claim to proceed in federal court would interfere with a state's jurisdiction over a pending matter, *Johnson*, 808 F. Supp. at 1318, the Court declines to exercise jurisdiction over Plaintiff's cause of action.

### C. Judgment on the Pleadings/Failure to State a Claim

A motion for judgment on the pleadings must be analyzed according to the same standards used for a motion to dismiss brought under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*,

539 F.3d 545, 549 (6th Cir. 2008). In reviewing a motion for judgment on the pleadings, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007)). The court is not required, however, to accept a plaintiff's "legal conclusions or unwarranted factual inferences as true," as the operative complaint must include "direct or inferential allegations respecting all the material elements under some viable legal theory" to withstand a Rule 12(c) motion. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). Rule 12(c) motions are appropriately granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker,* 539 F.3d at 549 (quoting *Winget,* 510 F.3d at 582).

Although the Court concludes that it lacks both personal and subject-matter jurisdiction over Plaintiff's claims, the Court addresses Defendant's alternative contention that Plaintiff's complaint fails to state a claim upon which relief can be granted. Defendant correctly notes, and Plaintiff does not appear to dispute, that Arkansas law should govern the Court's analysis of Plaintiff's state law claims. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) ("In diversity cases we apply the choice-of-law rules and substantive law of the forum state."). The postnuptial agreement provides that Arkansas law shall govern any disputes involving the terms contained in the agreement. (Docket No. 1 at 18.) So it shall.

Arkansas law provides a five-year statute of limitations for bringing claims for breach of a written contract. Ark. Code Ann. § 16–56–111. This generally applies to property settlement agreements that are incorporated into a decree of divorce. *Fitton v. Fitton*, No. CA00-1328, 2001 WL 1091216, at *1 (Ark. Ct. App. Sept. 12, 2001) (citing *Meadors v. Meadors,* 58 Ark.App. 96,

12

946 S.W.2d 724 (1997)).[7] The statute begins to run "the moment the right to commence an action comes into existence," i.e., when the breach occurs. *Highland Indus. Park, Inc. v. BEI Def. Sys. Co.*, 357 F.3d 794, 798 (8th Cir. 2004) (internal citations omitted). Put another way, the "true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion." *Dupree v. Twin City Bank*, 300 Ark. 188, 191, 777 S.W.2d 856, 858 (1989). The question is thus when Plaintiff's cause of action accrued.

The Complaint alleges breach of contract based on Defendant's purported failure to "perform the duties" set forth in the postnuptial agreement. (Docket No. 1 at 3.) The postnuptial agreement provides the following language regarding the applicability of its terms:

> [Defendant] and [Ms. Haynes] acknowledge that should there be filed by either party a legal proceeding for divorce or legal separation (Separate Maintenance), or other complaint for the dissolution of or separation of the parties hereto, and subsequently there is a decree granted to either party hereto, for any reason, and by reason of any fault found of either or both of the parties hereto, that the following agreements shall be incorporated into the said decree without contest or objection by either party, and further, the following agreements shall be honored and binding as to each party hereto, even in the event the parties remain married, which each party acknowledges is their intention hereunder, it being important that each party not be burdened by financial matters over their personal lives as husband and wife[.]

---

[7] Notably, Arkansas recognizes two types of property settlement agreements: independent contracts, which do not merge into a divorce decree and are therefore not subject to modification by a trial court; and less formal agreements that do merge and become part of a decree of divorce. *Meadors*, 58 Ark. App. at 98, 946 S.W.2d at 724-25. This distinction is significant because an independent contract is subject to a five-year statute of limitations, while an informal agreement that becomes part of a divorce decree is considered a judgment and thus subject to a 10-year statute of limitations under Ark. Code Ann. § 16–56–114. *Id.* However, because Plaintiff disputes only when, and not whether, the five-year statute of limitations became applicable to her claims, the distinction is irrelevant to the instant analysis.

13

(*Id*. at 11.) The Complaint identifies December 26, 2007, as the date on which Defendant was served with process regarding the divorce action brought by Ms. Haynes. (*Id*. at 1.) On January 24, 2014, a decree of divorce was entered in Arkansas state court. (Docket No. 28 at 23, 31.)[8]

Defendant argues, both in his answer and in the current motion, that the statute of limitations for any breach of contract claim began to run on this date—January 24, 2014—by asserting that incorporation of the postnuptial agreement into the divorce decree on this date represented a "necessary condition precedent for the Plaintiff to assert any right to commence an action against the Defendant." (*Id*. at 18.) Plaintiff appears to confirm, albeit inadvertently, that the statute of limitations commenced at least around the time of the divorce decree:

> The statute of limitations did not start when the courts incorporation into the divorce decree [sic]. The [state court] judge on the last day of the hearing at the end of the arguments was presented with the question why wasn't Ashley Bass was not [sic] given the same assets as the brother. Judge Rogers quickly complied [sic] that they are both adults and they can make their claim in another court.

(Docket No. 30 at 6.) Indeed, Plaintiff elsewhere states that the instant cause of action was filed directly in response to the state judge's statements:

> Judge Rogers, on the last day of the divorce trial stated when the issue of what [Defendant] promised me was brought up, [the judge] immediately responded they are adults and [they] can pursue their issues in another court and that is what I have done.

(Docket No. 32 at 5.) Therefore, even viewing the pleadings and filings in the light most favorable to Plaintiff, she was aware of Defendant's intention to breach the postnuptial agreement by

---

[8] Defendant asserts that the divorce decree was entered on January 14, 2014 (Docket No. 28 at 18.) However, the exhibit Defendant identifies as the divorce decree that is attached to his motion includes a court clerk's stamp indicating that the decree was not entered until January 24, 2014. (Docket No. 28 at 23.) Although this discrepancy has no bearing on the instant analysis, the Court construes January 24 to be the date of entry and takes judicial notice of this public record, as is appropriate when considering a Rule 12(b)(6) motion. *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

January 24, 2014. Because the Complaint was filed on March 9, 2020, it falls outside the applicable five-year period.

A less charitable interpretation of the facts suggests that the statute of limitations began to run even earlier. As noted above, the Complaint avers that Defendant conveyed to her brother the same benefits she was owed under the postnuptial agreement—$500,000, a residence, and a marina business—in February 2008. (Docket No. 1 at 2, 12.) Because the Complaint alleges that Plaintiff did not also receive these benefits despite being entitled to them, one could argue that Plaintiff was put on notice of Defendant's intention to breach the agreement as of February 2008. *See Shelter Mut. Ins. Co. v. Nash*, 357 Ark. 581, 587-88, 184 S.W.3d 425, 428 (2004) ("A cause of action for breach of contract accrues the moment the right to commence an action comes into existence, and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached."). Such a reading is supported by the Complaint's request for alternative relief in the form of "the net operating income from one of the marinas for the prior 13 years" (Docket No. 1 at 4), which suggests a belief on the part of Plaintiff that she was entitled to damages flowing from a breach of the agreement at or around February 2008.

The Complaint elsewhere alleges that Defendant did in fact purchase a marina business in Knoxville, Tennessee for Plaintiff, although the date of this transaction is not identified, and the details of Defendant's purported malfeasance are not particularly specific. The Complaint describes other undated, general acts of misconduct by Defendant that include seizure of marital assets from Ms. Haynes for the benefit of a "paramour girlfriend," mental, physical, and emotional abuse of Plaintiff, misrepresentations made under oath about Defendant's compliance with the postnuptial agreement, and "forc[ing] her" to relocate to Arkansas. (*Id.* at 3, 5-7.) Such indeterminate recitations are normally insufficient to survive a motion to dismiss. *See Echols v.*

*Voisine*, 506 F. Supp. 15, 17 (E.D. Mich. 1981), *aff'd*, 701 F.2d 176 (6th Cir. 1982) (table) (granting defendant's Rule 12(b)(6) motion and dismissing complaint that contained "only vague reference to relevant dates, times and facts").

Apparently sensing the strength of Defendant's position, Plaintiff pivots her argument in her subsequent filings. While the claims set forth in the Complaint are clearly based on the postnuptial agreement that ultimately became part of the divorce decree, Plaintiff now argues that the cause of action is not actually based on the postnuptial agreement, but on an "oral agreement" Defendant allegedly entered into during a deposition—apparently conducted as part of the underlying divorce proceeding—which should have resulted in her possession of a 50% ownership interest in the Lakeview Marina. (Docket No. 30 at 2, 4; Docket No. 31 at 2, 7, 11; Docket No. 32 at 3, 5; Docket No. 36 at 6-9.) According to Plaintiff, "[Defendant's] deposition created the contract which is the subject of my claim" (Docket No. 31 at 2), and her claim "arises with what [Defendant] said he would give me in the form of a sworn statement in a deposition which he indicates he would give me assets and worldly advice [sic]." (Docket No. 30 at 4.) It is unclear from the record when or where this oral agreement was created as Plaintiff claims at one point that the deposition took place in 2008 (Docket No. 31 at 13), while two largely indiscernible exhibits attached to one of the filings suggests that a deposition was conducted in January 2013. (Docket No. 36 at 12-13.)

To even entertain Plaintiff's evolving argument, the Court must first rely on a number of dubious assumptions: that statements made during an unconfirmed deposition of Defendant constitute an oral agreement; that this oral agreement is not invalidated by Arkansas' statute of frauds, which declares that any contract "that is not to be performed within one (1) year from the making of the contract" is void unless it is written and signed, Ark. Code Ann. § 4-59-101(a); and

that Plaintiff may sue for breach of this oral contract despite not being a party to the contract. Even assuming these things to be true, Plaintiff's filings indicate that the subject deposition took place no later than January 2013, which is earlier than the January 24, 2014 date on which Defendant bases his statute of limitations defense. Any claim for breach of this "oral contract" would therefore be barred by the shorter *three*-year statute of limitations applicable to oral contracts. *See* Ark. Code Ann. § 16-56-206.

Plaintiff attempts to overcome the time bars to her action by asserting that the statute of limitations was tolled due to Defendant's "fraudulent concealment." (Docket No. 31 at 13.) If it is clear from the face of the complaint that an action is barred by the applicable limitations period—which, based on the latest possible date of January 24, 2014 for accrual of the action, is true here—the burden shifts to the plaintiff to "prove by a preponderance of the evidence" that the statute of limitations was in fact tolled. *Reece v. Bank of New York Mellon, Tr. for CIT Mortg. Loan Tr. 2007-1*, 381 F. Supp. 3d 1009, 1016 (E.D. Ark. 2019) (citing *Meadors v. Still*, 344 Ark. 307, 40 S.W.3d 294, 298 (2001)). And for fraudulent concealment to serve as the basis for tolling a limitation period under Arkansas law, there must be: "(1) a positive act of fraud (2) that is actively concealed, and (3) is not discoverable by reasonable diligence." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (citation omitted).

Plaintiff contends that the period was tolled because Defendant allegedly "concealed the assets that he promised to give to [Plaintiff]," and "kept the asset[s] tied up with liens, mortgages and extended the final disposition of the divorce decree into a 14-year odyssey." (Docket No. 30 at 5; Docket No. 31 at 13.) Plaintiff does not explain, however, why such conduct prevented her from filing a federal lawsuit for breach of contract when she learned—at least by January 24, 2014—that she was not receiving the same assets as her brother. This omission makes Plaintiff's

argument especially unpersuasive given her repeated contention that her current claim "has nothing to do with" the state proceedings involving Defendant's divorce. (Docket No. 30 at 4; Docket No. 31 at 12; Docket No. 32 at 5; Docket No. 36 at 8-9.)

The only remotely specific allegation made by Plaintiff with respect to fraudulent concealment is that Defendant "illegally signed a work out agreement with the Arkansas Department of taxation to lien the [marital] house or use it as collateral for payment of delinquent taxes pay plan [sic]." (Docket No. 30 at 2.) Yet this averment does not identify when such conduct took place or how it was actively concealed, thus it fails to provide the "particularity" required to toll the statute of limitations. *Summerhill*, 637 F.3d at 880. And even assuming Plaintiff has sufficiently pled that Defendant engaged in affirmative and fraudulent concealment, the statute of limitations would only have been tolled "until the party … discover[ed] the fraud or should have discovered it by the exercise of reasonable diligence." *Id*. (quoting *Martin v. Arthur,* 339 Ark. 149, 3 S.W.3d 684, 687 (1999)). As previously discussed, Plaintiff was aware of Defendant's intention to breach by at least January 2014, by which point reasonable diligence should have allowed Plaintiff to detect any fraud perpetrated by Defendant in connection with the postnuptial agreement.

For many of the same reasons, the Court additionally finds that the Complaint's fraud claim is independently subject to dismissal. Rule 9 requires that any party alleging fraud "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, a plaintiff must, at a minimum, "allege the time, place, and content of the alleged misrepresentation on which … she relied; the fraudulent scheme; the fraudulent intent of the defendant[]; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc. (Bledsoe I)*, 342 F.3d 634, 643 (6th Cir. 2003). This heightened pleading standard does not

negate the general policy favoring simplicity in pleading as set forth in Rule 8's "short and plain statement" requirement, but nonetheless requires that a complaint "place the defendant on sufficient notice of the misrepresentation, allowing the defendant to answer, addressing in an informed way plaintiff's claim of fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 162 (6th Cir.1993) (citation omitted and cleaned up). In Arkansas, five elements must be present to constitute actual fraud: (1) a false representation; (2) knowledge or belief by the defendant that a representation is false; (3) intent to induce reliance on the part of the plaintiff; (4) justifiable reliance by the plaintiff; and (5) resulting damage to the plaintiff. *Evans Indus. Coatings, Inc. v. Chancery Ct. of Union Cty., Third Div*., 315 Ark. 728, 733, 870 S.W.2d 701, 703 (1994) (internal citations omitted).

As discussed above, the Complaint is quite short on specificity with respect to the time and date of Defendant's allegedly fraudulent actions, instead claiming broadly that Defendant "control[ed] the plaintiff by every dollar" and "went against the postnuptial." (Docket No. 1 at 5.) While *pro se* litigants are given some measure of "lenient treatment," such leniency is not without limits, *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996), and even *pro se* parties "must state and support all elements of a substantive claim to avoid an adverse judgment." *Durante v. Fairlane Town Ctr.,* 201 F. App'x 338, 344 (6th Cir. 2006). Because Plaintiff has failed to do so, and because the instant cause of action is barred by the applicable statute of limitations, Defendant's motion for judgment on the pleadings is well-taken and the Complaint should be dismissed.[9]

---

[9] A dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction is without prejudice. *See Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice.") Similarly, a dismissal under 12(b)(2) for lack of personal jurisdiction, is ordinarily without prejudice. *See Intera*, 428 F.3d at 620 (dismissals for lack of personal jurisdiction should be made "without prejudice"). A dismissal under Rule 12(b)(6), and by implication under Rule 12(c), is however generally construed as a ruling on the merits and entered with prejudice. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 917 (6th Cir. 1986) (internal citation omitted).

## III. RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that Defendant's motion to dismiss (Docket No. 27) be GRANTED as follows:

(1) the Complaint be DISMISSED WITHOUT PREJUDICE under Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(2) for lack of personal jurisdiction;

(2) alternatively, if the District Judge finds that subject-matter and personal jurisdiction may be properly exercised, the Complaint be DISMISSED WITH PREJUDICE as an adjudication on the merits under Rule 12(c).

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge

20

Case 3:20-cv-00203   Document 38   Filed 12/06/21   Page 20 of 20 PageID #: 306